# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL BASKETBALL RETIRED PLAYERS ASSOCIATION, an Illinois corporation, and MARIAM KURDADZE, an individual, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 16 CV 09454 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The National Basketball Retired Players Association ("NBRPA") and its prospective employee, Mariam Kurdadze, bring this suit to challenge the U.S. Citizenship and Immigration Services' ("USCIS") June 29, 2016 rejection of the H-1B visa petition that the NBRPA filed on Kurdadze's behalf. The NBRPA has moved for a preliminary injunction, an evidentiary hearing, and summary judgment. The USCIS has opposed those motions, and filed its own motion to dismiss the case for lack of subject-matter jurisdiction and for failure to state a claim. The motion to dismiss is granted, and the case is dismissed with prejudice. The remaining pending motions are denied as moot.

## BACKROUND

The USCIS lodged its motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This Court therefore takes as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences in favor of the NBRPA and Kurdadze, the non-

moving parties. *See Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003) (Rule 12(b)(1); *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2012) (Rule 12(b)(6)).

The NBRPA is a non-profit organization with the stated mission of assisting former players from the National Basketball Association, the Women's National Basketball Association, and the Harlem Globetrotters "in their transition from playing court into life after the game, while also positively impacting communities and youth through basketball." Am. Compl. ¶ 2, ECF No. 2. Kurdadze, meanwhile, is a citizen and national of the country of Georgia. *Id.* ¶ 3. She is a recent graduate of Tulane University, where she received a Master's degree in Business Administration. *See* April Pet., ECF No. 2-1. The NBRPA filed the visa petition at the center of this lawsuit on April 6, 2016, asking the USCIS to classify her as an H-1B nonimmigrant so that the NBRPA could employ her as an Operations and Special Projects Coordinator. *Id.* ¶ 12. The H-1B program is a means of securing lawful immigration status for noncitizens of the United States who come to the country temporarily to perform services "in a specialty occupation" and who meet certain requirements. *Id.* ¶ 7 (citing U.S.C. § 1101(a)(15)(H)(i)(B)). By statute, the number of petitions that the USCIS may approve is capped for each fiscal year. *Id.* ¶ 8.

More specifically, as the USCIS notes in its own briefs with this Court,[1] Congress has limited the number of people who may be issued H-1B visas or otherwise granted H-1B status to no more than 65,000 for each fiscal year since fiscal year 2003. *See* 8 U.S.C. § 1184(g)(1)(A)(vii); *see also* Def.'s Opp'n to Prelim. Inj. at 3. The government may issue H-1B status to an additional 20,000 people per fiscal year who have earned postgraduate degrees from United States universities (the "Masters cap"). *See* 8 U.S.C. § 1184(g)(5)(C). Further, these

---

[1] The USCIS referenced much of this statutory and regulatory background in its brief responding to the plaintiffs' motion for a preliminary injunction. The USCIS then incorporated that background by reference into its brief in support of its motion to dismiss. *See* Mem. in Supp. of Mot. to Dismiss at 2.

numerical limits do not apply to employees of certain nonprofit, governmental, or educational research institutions or entities. *Id.* at § 1184(g)(5)(A)-(B). As a recent Master's graduate of an American university, Kurdadze was eligible for consideration under both the Master's and regular visa caps, but the NBRPA does not qualify for the cap-exemption for government- and university-affiliated non-profit organizations. *See* 8 U.S.C. § 1184(g)(5)(A)-(C); *see also Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 384 (7th Cir. 2015). The 2016 fiscal year for the federal government ran from October 1, 2015 to September 30, 2016, and the 2017 fiscal year began on October 1, 2016 and will end on September 30, 2017. *See Fiscal year*, U.S. SENATE GLOSSARY, https://www.senate.gov/reference/glossary_term/fiscal_year.htm ("The fiscal year is the accounting period for the federal government which begins on October 1 and ends on September 30."). The USCIS will reject petitions that are not validly signed, executed, submitted with the correct fees, and filed "in compliance with the regulations governing the filing of the specific application, petition, form or request." 8 C.F.R. § 103.2(a)(7)(ii). A rejected petition does not retain its filing date and may not be appealed within the agency. *Id.* at § 103.2(a)(7)(ii)-(iii).

Employers seeking to secure H-1B status for a nonimmigrant prospective employee must submit a Labor Condition Application ("LCA") to the U.S. Department of Labor ("DOL") that includes information about the employee's wages, and federal regulations also require that the LCA list the starting and ending dates of employment. *See* 8 U.S.C. § 1182(n)(1); 20 C.F.R. § 655.730(a), (c)(4). If the DOL certifies the LCA, the employer's next step is to submit that certified document to the USCIS in support of the employer's Petition for a Nonimmigrant Worker, known as a Form I-129. *See* 20 C.F.R. § 655.730(c)(3); 8 C.F.R. § 214.2(h)(4)(iii)(B)(1)-(2). In accordance with federal regulations, the USCIS administers the

H-1B program by projecting "how many petitions it must process to issue a full complement of visas, taking into account historical rates of denials, withdrawals, and revocations." *Rubman*, 800 F.3d at 384; *see also* 8 C.F.R. § 214.2(h)(8)(ii)(B). Employers may not file the I-129 petition more than six months before the requested employment start date, *see* 8 C.F.R. § 214.2(h)(9)(i)(B), and the USCIS began accepting H-1B petitions for fiscal years 2016 and 2017 on April 1, six months before the start of those fiscal years. *See* Ex. B to Def.'s Opp'n to Prelim. Inj. at 4; *USCIS Will Accept H-1B Petitions for Fiscal Year 2016 Beginning April 1, 2015*, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Mar. 12, 2015), https://www.uscis.gov/news/uscis-will-accept-h-1b-petitions-fiscal-year-2016-beginning-april-1-2015.[2] The USCIS closes the filing period once it receives its calculated target number of petitions, and if that closing date is within the first five business days on which filings can be made, the agency will conduct a lottery. *See* 8 C.F.R. § 214.2(h)(8)(ii)(B). Petitions selected in the lottery are each assigned a receipt number, and the remaining petitions are rejected and returned with their filing fees. *Id.*; *see also Rubman*, 800 F.3d at 384. The USCIS then processes the petitions with receipt numbers and awards visas to those who qualify, up to the cap limit. *Rubman*, 800 F.3d at 384.

The petition at the center of this lawsuit was actually the NBRPA's fourth attempt at securing H-1B visa status for Kurdadze. The USCIS has rejected petitions from the NBRPA on Kurdadze's behalf a total of five times, though in the current suit the plaintiffs are only challenging the agency's rejection of its April 6, 2016 submission. *Id.* ¶¶ 1, 14-15. In that Form

---

[2] *See Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008) ("We may take judicial notice of documents in the public record . . . without converting a motion to dismiss into a motion for summary judgment."); *United States ex rel. Dingle v. Bioport Corp.*, 270 F. Supp. 2d 968, 973 (W.D. Mich. 2003) (court may take judicial notice of "public records and government documents available from reliable sources on the Internet").

I-129 petition, the NBRPA requested that Kurdadze's lawful nonimmigrant status in the United States be changed from F-1, which covers foreign students, to H-1B. *Id.* ¶ 13; April Pet.; *see also* 8 U.S.C. § 1101(a)(15). The Form I-129 petition listed Kurdadze's dates of intended employment as running from "10/1/2016" to "06/01/2019," but the LCA that the NBRPA submitted with the petition, as required, listed her period of intended employment as beginning "06/01/2016" and ending "06/01/2019." April Pet. at 5; April LCA at 1, ECF No. 2-1. The USCIS rejected the petition in a notice dated June 29, 2016, which read:

> All H-1B cap-subject petitions received at the California or Vermont Service Centers from April 1, 2016 to April 7, 2016 were subject to a computer-generated random selection process. USCIS received your cap-subject H-1B petition during this filing period and reviewed it to determine if it was properly filed. USCIS does not consider the petition to be properly filed for the reason(s) noted below. Therefore, USCIS has rejected the petition and is returning it to you. Please do not resubmit this petition as the H-1B cap for FY17 closed on April 7, 2106.
>
> Your Form I-129 petition subject to FY 17 cap has an employment date earlier than 10/01/2016.

Am. Compl. ¶ 16; June Rejection Notice, ECF No. 2-2. The plaintiffs allege, on information and belief, that there are individuals who were subject to the numerical caps set out in § 1184(g) and who submitted their petitions to USCIS after the NBRPA did for Kurdadze, and who were still issued H-1B visas or otherwise provided nonimmigrant H-1B status. Am. Compl. ¶ 19.

Following this rejection, the NBRPA filed another petition on August 19, 2016 with some additional documentation. Am. Compl. ¶ 20; August Pet., ECF No. 2-3. In that filing, the NBRPA asserted that the agency's rejection of the prior petition was improper because that April 2016 Form I-129 clearly listed October 1, 2016 as Kurdadze's employment start date. Am. Compl. ¶ 21. The NBRPA also told the agency that even if the petition's listed start date had been prior to October 1, 2016, the petition was still approvable as long as some part of the

5

requested work period was on or after October 1, 2016. *Id.* ¶ 22. The USCIS rejected this fifth petition as well on August 23, 2106, saying that this petition also had an employment date earlier than 10/01/2016 and again asking the NBRPA not to resubmit the petition "as the H-1B cap for FY17 closed on April 7, 2016." *Id.* ¶ 24; August Rejection Notice, ECF No. 2-5. The NBRPA does not in this suit challenge the USCIS rejection of the August 19, 2016 petition.

The plaintiffs launched this lawsuit on October 3, 2016, invoking the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, as well as the mandamus provision codified at 28 U.S.C. § 1361. In Count I of their Amended Complaint, they seek a ruling holding the NBRPA's rejection of the April 2016 petition unlawful and setting it aside on the grounds that it was not in accordance with the USCIS's own regulations and was therefore "arbitrary and capricious." Am. Compl. ¶¶ 1, 25-30. In Count II, the plaintiffs assert that the agency's rejection was "premised upon legal error" in that "there is no law that prevents USCIS from approving a petition requesting a starting employment date prior to 10/01/2016 effective upon 10/01/2016." *Id.* at 8. Finally, in Count III, the NBRPA and Kardadze allege that the agency's rejection of the petition "was unsupported by substantial evidence" and thus was "arbitrary and capricious." *Id.* at 9-10. The plaintiffs want this Court to order the USCIS "to fulfill its duty" under the Immigrant and Nationality Act, 8 U.S.C. § 1154(g)(3), to consider Kardadze "for H-1B nonimmigrant status exactly as if NBRPA's petition had not been rejected, and in the order in which H-1B petitions for such visas or status were filed for Fiscal Year 2017." *Id.* ¶ 1.

Notwithstanding the fact that USCIS had stopped accepting fiscal year 2017 H-1B applications on April 7, 2016, and that fiscal year 2017 was underway when they filed their complaint, the plaintiffs did not seek a temporary restraining order or any other emergency relief with their filing. Instead, more than a month later they filed a motion for a preliminary injunction

allowing Kurdadze to remain in the United States with employment authorization while the suit was pending. *See* Mot. for Prelim. Inj., ECF Nos. 4, 5. Ten days after presentment of their motion, and before the government had even responded, the plaintiffs filed a motion for summary judgment. After the USCIS moved to dismiss the case in December 2016 in lieu of answering the complaint, the plaintiffs—despite having moved previously for summary judgment and having agreed that no discovery was required to address their preliminary injunction motion—moved to have an evidentiary hearing to identify the employment start date on the April 2016 petition, a factual issue they said was central to the motion to dismiss. This Court turns now to the USCIS' motion to dismiss the Amended Complaint.

## ANALYSIS

### I. Standing

The USCIS argues, first and foremost, that the case must be dismissed because the plaintiffs lack standing—and this Court therefore lacks subject-matter jurisdiction—under Article III of the U.S. Constitution. Standing "is an essential component of Article III's case-or-controversy requirement," and in essence concerns "whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (quoting *Perry v. Vill. of Arlington Heights,* 186 F.3d 826, 829 (7th Cir. 1999) (internal quotation marks omitted). It is the plaintiffs' burden to show that they satisfy the requirements of standing. *See Kathrein v. City of Evanston*, 636 F.3d 906, 914 (7th Cir. 2011). To establish Article III standing, the plaintiffs must show "an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and 'that is likely to be redressed by a favorable judicial decision.'" *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1302 (2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). In its motion to dismiss, the

USCIS attacks the plaintiffs' standing on several fronts, but most pertinent is its argument that any injury-in-fact the NBRPA and Kurdadze allege—and the agency disputes that they have adequately alleged an injury-in-fact for standing purposes—is not redressable by a favorable decision from this Court. *See* Mem. in Supp. of Mot. to Dismiss at 5. The Supreme Court has long made clear that standing requires that it "be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).

The USCIS argues that to the extent that the April 2016 petition sought H-1B status for Kurdadze starting in fiscal year 2016—as the USCIS argues it did given the June 2016 start date listed on the attached LCA—the plaintiffs' sought-after relief is illusory. *See* Mem. in Supp. of Mot. to Dismiss at 5. This Court agrees. The USCIS announced on April 7, 2015, that it was closing the filing period for fiscal year 2016 H-1B petitions on that date, and that it would be moving on to the lottery process to randomly select the petitions needed to meet the statutory visa caps for that year. *See USCIS Reaches FY 2016 H-1B Cap*, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Apr. 7, 2015), https://www.uscis.gov/news/news-releases/uscis-reaches-fy-2016-h-1b-cap. Furthermore, fiscal year 2016 ended on September 30, 2016, several days before the plaintiffs even lodged the current suit. As a result, even if this Court were to order the USCIS to consider the April 2016 petition, that agency has no ability to issue H-1B visas or otherwise provide H-1B status for fiscal year 2016 presently (and, indeed, had no such ability when this case was filed). *See, e.g., Patel v. Rodriguez*, No. 15–cv–486, 2015 WL 6083199, at *5 (N.D. Ill. Oct. 13, 2015) (finding a lack of standing where it was undisputed that the statutory cap for U-visas had been reached, concluding that the court "is thus unable to provide relief"); *Alpha K9 Pet Services v. Johnson*, 171 F. Supp. 3d 568, 580-81 (S.D. Tex.

2016) (finding plaintiffs lacked standing on redressability grounds, as the "USCIS ha[d] already reached its statutory H-2B visa cap for the 2015 fiscal year" and the petitions at issue were filed for that fiscal year). This Court cannot raise the numerical caps that Congress has set by statute. To the extent that the petition was for fiscal year 2016, therefore, the plaintiffs lack standing because they have failed to establish that a favorable ruling by this Court is likely to redress their alleged injury.

The plaintiffs vigorously dispute that they filed a 2016 application and insist that the fact dispute about whether the petition was for fiscal year 2016 or 2017 precludes dismissal of their complaint. The plaintiffs are correct that, to the extent that the petition at issue was for fiscal year 2017, their claims are redressable. The USCIS announced on April 7, 2016, that it was closing the filing period for fiscal year 2017 H-1B petitions. *See USCIS Reaches FY 2017 H-1B Cap*, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Apr. 7, 2016), https://www.uscis.gov/news/news-releases/uscis-reaches-fy-2017-h-1b-cap. Closing the filing period does not mean, however, that the agency had actually exhausted the capped number of H-1B visas—or H-1B status grants—that the statute permits each year. Rather, closing the filing period meant that the agency had received what it perceived as ***enough*** petitions to ***enable*** it to meet that capped number. The agency did assert in a brief that even if the plaintiffs prevail in their case, "there would be no more visas left from the 2016 or 2017 fiscal years to issue." Def.'s Opp'n to Prelim. Inj. at 9. But at a subsequent hearing before this Court on June 14, 2017, counsel for the agency clarified that, notwithstanding the implication of the government's argument about the number of petitions accepted, the USCIS in fact had ***not yet run out*** of available H-1B status grants for fiscal year 2017 as of that date. To the extent, then, that the plaintiffs' petition can be construed as a fiscal year 2017 petition, it is not moot; relief in the

form of an order directing consideration of the petition could redress the plaintiffs' claimed injury.

The USCIS also argues that the plaintiffs' failure file a fiscal year 2017 petition with the proper documentation actually goes to their lack of standing, saying this failure shows that their alleged injuries are "entirely self-inflicted" and thus not traceable to the agency's own actions. Mem. in Supp. of Mot. to Dismiss at 3-4. For that point, the USCIS cites to *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512 (7th Cir. 2010), where the Seventh Circuit found that a plaintiff's procedural "injury"—that his claims were precluded because he had previously filed them, then dismissed them without prejudice, in a case where the judge later entered a final merits judgment on a remaining claim—was not traceable to the defendant's alleged unlawful conduct because it was "entirely self-inflicted, resulting solely from [the plaintiff's] decision to split its claims." *Id.* at 518. But the current case is distinguishable. Here, the alleged injury is traceable to the agency's decision to reject the petition—which is also the focus of the plaintiffs' claims—rather than to a legal doctrine like preclusion that the plaintiffs themselves triggered. The agency's traceability argument seems more properly based in its argument that the plaintiffs' claims fail on the merits because the agency's rejection of the petition was proper. So on to the merits.

## II. The Agency's Action Was Not Arbitrary and Capricious

On the merits, the plaintiffs' complaint fails as a matter of law because the USCIS acted reasonably in construing the April 2016 application as improperly filed. "A court reviewing an agency's action, findings, or conclusions under the APA must set aside those it determines to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or 'without observance of procedure required by law.'" *Musunuru v. Lynch*, 831 F.3d 880, 887 (7th

Cir. 2016) (citing 5 U.S.C. §§ 706(2)(A), 706(2)(D); *Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir. 1995)). When deciding whether an agency's decision is arbitrary or capricious, a court must consider whether the agency:

> has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Zero Zone, Inc. v. U.S. Dep't of Energy*, 832 F.3d 654, 668 (7th Cir. 2016) (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007)).

The plaintiffs have failed to adequately allege that the USCIS's rejection of the application was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. When submitting the petition at issue in this case, the NBRPA was required by statute to also submit an LCA that had been certified by the DOL. The NBRPA did so, but the LCA in question listed an employment start date in fiscal year 2016. The USCIS looked at that statutorily required LCA when evaluating the petition, and informed the NBRPA that it was rejecting the petition because it indicated an employment start date earlier than the start of fiscal year 2017. In doing so, the agency was not acting in a way that was arbitrary or capricious. The agency at that time was accepting petitions only for fiscal year 2017, and it was certainly not arbitrary, capricious, or contrary to law for the USCIS to consider the statutorily-required LCA when evaluating the sufficiency of the petition that the LCA was filed to support.

The plaintiffs assert in Count I of their complaint that the agency's rejection of the petition was contrary to 8 C.F.R. § 103.2(a)(7)(i), but that regulation merely provides that "USCIS will consider a benefit request received and will record the receipt date as of the actual date of receipt at the location designated for filing such benefit request whether electronically or

in paper format." *See id.*; Am. Compl. at 7. There is no dispute here, however, about the relevant receipt date for the petition. The complaint also seems to refer to provisions in 8 C.F.R. § 103.2(a)(7)(ii) that state that a benefit request will be rejected if it is not signed, executed, and submitted with the correct fees. *See id.*; Am. Compl. ¶ 25. But it does not follow that the agency ***may not*** reject any signed, executed, and properly paid-for petition for some other reason; notably, that same regulation also requires that such applications and petitions be filed in compliance with applicable regulations. *See* 8 C.F.R. § 103.2(a)(7)(ii). The plaintiffs similarly fail to state a claim in Count II of their complaint, where they assert that the agency's rejection of the petition was "premised upon legal error" because "there is no law that prevents USCIS from approving a petition requesting a starting employment date prior to 10/01/2016 effective upon 10/01/2016." Am. Compl. ¶ 32. But even assuming that there is no legal authority that ***prevents*** the agency from taking such action, that does not support a conclusion that the agency was ***required*** to take that action. As described above, federal regulations require that the LCA list the starting and ending dates of employment. This Court will not find that the agency acted contrary to law by not correcting the start date that the NBRPA itself provided on its LCA. Finally, the plaintiffs assert in Count III of their complaint that the USCIS's conclusion that the petition listed an early start date "was unsupported by substantial evidence and so [was] arbitrary and capricious." Am. Compl. ¶ 35. But, once again, an early start date did appear on the statutorily required LCA form that the NBRPA submitted to the agency. Given that submission, the agency's conclusion that the petition sought a pre-fiscal year 2017 start date was neither arbitrary nor capricious.

For much the same reason, the plaintiffs have failed to state a claim for mandamus relief under the APA or the mandamus provisions of 28 U.S.C. § 1361. The plaintiffs assert in Count

III of their complaint that a decision on the petition "has been unlawfully withheld and unreasonably delayed" by the USCIS, and that this Court should therefore compel the agency to "make a decision" on the petition. Am. Compl. at 10. But that misses the mark; the agency made a decision on the petition by rejecting it. And a claim under § 706(1) of the APA to "compel agency action" that is unlawfully withheld or unreasonably delayed "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original). "The limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law)." *Id.* (emphasis in original). The plaintiffs have completely failed to identify any required action that the USCIS failed to take. They fare no better in their efforts to secure relief under § 1361, which requires that they demonstrate "(1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Iddir v. I.N.S.*, 301 F.3d 492, 499 (7th Cir. 2002). The plaintiffs have not pointed to any statutory or regulatory provision establishing that they are entitled to have their rejected petition thrown back into consideration by USCIS, nor to any such provision establishing that the USCIS has a duty to so consider it. The plaintiffs submitted a pre-fiscal year 2017 start date on the petition's LCA, and the USCIS rejected the petition for fiscal year 2017 accordingly and identified the early start date as the reason for the rejection. Frustrating though that result may be, the plaintiffs' complaint does not state a claim upon which this Court may grant relief.

\*　　\*　　\*

To the extent that the plaintiffs' petition was for fiscal year 2016, they lack standing to bring this suit because their alleged injuries cannot be redressed by a favorable decision by this

Court. To the extent the petition was for fiscal year 2017, the plaintiffs have failed to state a claim upon which relief can be granted. Because under either scenario the complaint will be dismissed, an evidentiary hearing on the start date question is unnecessary and the plaintiffs' motion for such a hearing is denied. For the foregoing reasons, the motion to dismiss is granted and the case is dismissed with prejudice. The plaintiffs' motions for a preliminary injunction and summary judgment are denied as moot.

Date: June 20, 2017

John J. Tharp, Jr.
United States District Judge